3 RIVERS TELEPHONE COOPERATIVE INC.; Range Telephone Cooperative Inc.; Blackfoot Telephone Cooperative Inc.; Northern Telephone Cooperative Inc.; Interbel Telephone Cooperative, Inc.; Clark Fork Telecommunications, Inc.; Lincoln Telephone Company; Ronan Telephone Company; Hot Springs Telephone Company, Plaintiffs–counter–defendants–Appellants,

v.

U.S. WEST COMMUNICATIONS, INC., Defendant–counter–claimant–Appellee.

No. 01–35065.

D.C. No. CV–99–00080–RFC.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 8, 2002.

Decided Aug. 27, 2002.

Before SCHROEDER, Chief Judge, FISHER, and PAEZ, Circuit Judges.

MEMORANDUM *

The plaintiffs ("Independents") brought this action for breach of tariff and related state law causes of action against the defendant U.S. West Communications Inc., now known as Qwest. The Independents

allege that Qwest breached their filed tariffs by refusing to pay terminating access charges for all Qwest-transported interexchange calls as measured by the Independents.

The district court granted summary judgment for Qwest without interpreting and applying the Independents' tariffs, finding that federal law as interpreted by the Federal Communications Commission ("FCC") does not obligate Qwest to pay terminating charges for traffic for which it is not the originating carrier. The district court concluded that the filed tariff doctrine, also known as the filed rate doctrine, had no application because "[t]his is not a dispute about rates" and "Plaintiffs offer no controlling legal authority—not one case—that supports this novel proposition that the filed rate doctrine forms the basis for a breach of contract action." We reverse and remand for further proceedings on the Independents' claims.

The district court erred in failing to interpret the tariffs at issue in this case. Under the filed tariff doctrine, a tariff filed with and approved by a regulating agency forms the "exclusive source" of the terms and conditions governing the provision of service of a common carrier to its customers. *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1170 (9th Cir. 2002) (citation and internal quotation marks omitted); *see also Am. Tel. & Tele-*

*graph Co. v. Cent. Office Tel., Inc.*, 524 U.S. 214, 222, 227, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998); *Evanns v. AT&T Corp.*, 229 F.3d 837, 840 (9th Cir.2000). A filed tariff obtains the force of law binding the utility and its customers to its terms and may be interpreted and enforced by a court in a breach of tariff action such as this one. *Brown*, 277 F.3d at 1171–72.[1] Because the Independents' tariffs form the exclusive source of the obligations between the Independents and their customers, the district court erred in analyzing the parties' obligations under FCC interpretations of the Telecommunications Act of 1996, 47 U.S.C. § 251–52, without interpreting the tariffs themselves. To interpret the tariffs in this case may also require further development of the record on technology and practices in the telecommunications industry, particularly as it relates to the transmission of calls in Montana. On this record, we therefore reverse the decision of the district court and remand for further proceedings on the interpretation and application of the Independents' tariffs.[2]

REVERSED AND REMANDED.

---

of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. The filed tariff doctrine applies to tariffs filed with both state and federal agencies. *See Knevelbaard Dairies v. Kraft Foods, Inc.* 232 F.3d 979, 992 (9th Cir.2000); *Cost Mgmt. Servs., Inc. v. Washington Natural Gas Co.*, 99 F.3d 937, 943 n. 7 (9th Cir.1996).

2. We note that, given the complexity of the issues raised in this case, the district court may deem it necessary to stay proceedings so that the parties may commence declaratory proceedings before the Montana Public Ser-

vices Commission ("PSC"). In earlier proceedings, the PSC found that it did not have jurisdiction over a collection action brought by the Independents against Qwest because the PSC does not have judicial powers and may not entertain actions brought by a utility against its customers. *See Mont.Code Ann.* § 69–3–103. It does, however, appear to be within the PSC's authority and expertise to issue a declaratory ruling with regard to (1) whether the calls for which the Independents seek payment are covered by the Independents' tariffs, and (2) whether a tariff, interpreted to require payment for such calls, is

just and reasonable in light of the FCC's interpretation of federal law. *See* Mont.Code Ann. §§ 69–3–201, 69–3–305; 69–3–321, 69–3–330; *cf.* Mont. Admin. R. § 38.2.101 (describing process for requesting declaratory ruling); *Milne Truck Lines v. Makita U.S.A., Inc.,* 970 F.2d 564, 569, 571 (9th Cir.1992) (holding that if the defendant in a breach of tariff action raises the "sufficient possibility" that a filed tariff is unjust or unreasonable, the court

may stay the proceedings until the agency in which the tariff was filed resolves the claim).

